UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

BONNIE ADAMS,                                          Civil No.: 13-CV-02301-AC

              Plaintiff,                                    OPINION AND ORDER

      v.

DAVID B. SCHUMACHER, PC,

              Defendant.

_____

ACOSTA, Magistrate Judge:

*Introduction*

        Plaintiff Bonnie Adams ("Adams"), an Oregon resident, brings this action against defendant David B. Schumacher, PC ("Schumacher"), an Oregon corporation. Adams alleges Schumacher violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692*o* (2014), while attempting to collect a debt she owed to a third-party creditor. Adams seeks a declaratory judgment

PAGE 1 - OPINION AND ORDER                                          *{PGR}*

that Schumacher's conduct violated the FDCPA, actual and statutory damages under § 1692k, and reasonable attorneys fees.

Schumacher moves for summary judgment in his favor pursuant to FED. R. CIV. P. 56.  On a cross-motion, Adams also moves for summary judgment on her claim.  The court grants, in part, and denies, in part, each motion.  With regard to § 1692g(a), the court grants Schumacher's motion and denies Adams's motion because the record establishes Shumacher met the validation notice requirements.  With regard to § 1692g(b), the court grants Adams's motion and denies Schumacher's motion because the record establishes Schumacher's initial communication obscured and overshadowed Adams's right to dispute her debt.

*Background*

Columbia Collection Service, Inc. ("CCS") hired Schumacher, an attorney, to collect on a judgment CCS obtained against Adams in Washington County Circuit Court.  Schumacher Decl. 1, Dkt. No. 14; *see generally Columbia Collection Service, Inc. v. Bonnie Jean Adams*, No. C131035SC (Wash. Cnty. Cir. Ct. Mar. 25, 2013).  Schumacher issued a writ of garnishment against Adams for $770.37 based on that judgment.  Schumacher Decl. Ex. 1, at 1, Dkt. No. 14-1.  On March 29, 2013, Schumacher sent the garnishment papers to Wells Fargo Bank, Adams's employer.  Schumacher Decl. 2; Schumacher Decl. Ex. 1, at 1.  Schumacher then sent a copy of the garnishment papers to Adams (the "Correspondence"), which included: (1) the writ of garnishment, (2) a debt calculation form, (3) notice of the property exempt from garnishment and instructions for challenging the writ, (4) a form to challenge the garnishment, and (5) an FDCPA notice (the "Notice").  Schumacher Decl. 2; Schumacher Decl. Ex. 1.  There was no other communication

PAGE 2 - OPINION AND ORDER                                    *{PGR}*

between Schumacher and Adams.  Pl.'s Mot. for Partial Summ. J. 3, Dkt. No. 16.  Adams challenged

the garnishment in court, but her challenge was denied.  Schumacher Decl. Ex. 2, at 19.

*Legal Standard*

Summary judgment is appropriate where (1) "the movant shows that there is no genuine

dispute as to any material fact" and (2) the movant is entitled to judgment as a matter of law."  FED.

R. CIV. P. 56(a) (2014).  Summary judgment is not proper if material factual issues exist for trial.

*Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material

fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party shows the absence of

a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts

which show a genuine issue for trial.  *Id*. at 324.  A nonmoving party cannot defeat summary

judgment by relying on the allegations in the complaint, or with unsupported conjecture or

conclusory statements.  *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

Thus, summary judgment should be entered against "a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party.  *Bell

v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982).  All reasonable doubt as to

the existence of a genuine issue of fact should be resolved against the moving party.  *Hector v.

Wiens*, 533 F.2d 429, 432 (9th Cir. 1976).  Where different ultimate inferences may be drawn,

summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140

(9th Cir. 1981).

*Discussion*

Adams alleges Schumacher, as a "debt collector" under the FDCPA, violated § 1692g(a) of the FDCPA by failing to provide the required debt validation information. Alternatively, Adams alleges Schumacher violated § 1692g(b) because the Correspondence, as conveyed, obscured and overshadowed her right to dispute the debt.

In response, Schumacher argues the Correspondence did not constitute an initial communication because the garnishment papers were legal pleadings, which are exempt from the statutory definition of "initial communication." Alternatively, Schumacher argues that even if all, or part of, the Correspondence constituted an initial communication, the Correspondence provided all of the debt validation information required under § 1692g(a). Further, Schumacher argues that sending the FDCPA notice to Adams concurrently with the garnishment papers did not obscure or overshadow Adams's right to dispute the debt because she no longer had the right to dispute the debt. Lastly, Schumacher argues that even if Adams's right to dispute the debt was overshadowed, he is not liable because his acts were not intentional and resulted from bona fide error.

I.    No Genuine Dispute of the Material Facts

The parties agree and the record reflects, there is no dispute regarding the material facts of this case. Adams admits the documents Schumacher reproduced in Exhibit 1 of his Declaration are the same documents she received from him in 2013. Pl.'s Mot. for Partial Summ. J. 1. There was no other communication between the parties. Adams's claims are based solely on the Correspondence she received from Schumacher regarding her debt to CCS.

II.    Judgment as a Matter of Law

Because there is no genuine issue of fact, the court first must resolve, as a matter of law, whether the Correspondence Schumacher sent Adams was an initial communication that subjected Schumacher to the validation notice requirements under § 1692g(a), and if so, whether Schumacher met those requirements. Second, if Schumacher met the notice requirements, the court then must resolve whether he violated § 1692g(b) by obscuring or overshadowing Adams's right to dispute the debt. Finally, if Schumacher committed any FDCPA violations, the court must determine whether the bona fide error defense exempts him from liability.

    *A.*    *The Correspondence Constituted an Initial Communication.*

Adams contends the Correspondence she received from Schumacher constituted an initial communication, which contention he supports with two alternative, though conflicting, arguments. First, Adams argues that the first three pages of the Correspondence (the writ of garnishment and corresponding debt calculation form) were exempt as legal pleadings. Adams then argues that pages four through seven of the Correspondence were not pleadings and instead constituted an initial communication because they conveyed debt information to Adams. Second, Adams concedes that had Schumacher excluded the Notice from the Correspondence, there would not have been an initial communication because the garnishment papers all would be considered legal pleadings. Adams reasons that by choosing to send the Notice, Schumacher engaged in an initial communication, which required him to comply with the FDCPA.

Conversely, Schumacher argues the writ of garnishment and corresponding papers were legal pleadings, which excluded them from constituting an initial communication. And because there was

PAGE 5 - OPINION AND ORDER                                        *{PGR}*

no initial communication, he was not required to send the Notice. According to Schumacher, the fact that he did send the Notice should not be a dispositive factor because the Notice, standing alone, was not a communication. Alternatively, Schumacher argues that if the Notice was a communication, it should be treated as a pleading because it was incorporated with the garnishment papers, thereby exempting it from constituting an initial communication.

The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium," but exempts "legal pleadings" from constituting an initial communication. 15 U.S.C. §§ 1692a(2), 1692g(d)-(e) ("A communication in the form of a legal pleading in a civil action shall not be treated as an initial communication for purposes of [§ 1692g(a)]."). The "legal pleadings" exemption was adopted in response to confusion about whether the FDCPA applies to attorney debt collectors.

In 1995, the U.S. Supreme Court decided *Heintz v. Jenkins*, 514 U.S. 291(1995), holding the FDCPA applies to attorneys "who 'regularly' engage in consumer-debt-collection activity, even when the activity consists of litigation." *Id.* at 299. However, the Court did not conclusively address all of the "anomalies" that resulted from such an interpretation. *Id.* at 295-96. For example, the FDCPA requires that a debt collector cease communication if a consumer notifies the debt collector that she refuses to pay or does not want any further communication, thereby affecting future litigation efforts by an attorney debt collector. *Id.* at 296. The defendant in *Heintz* asked, "[H]ow can an attorney file a lawsuit against (and thereby communicate with) a nonconsenting consumer or file a motion for summary judgment against the consumer?" *Id.* Although the Court suggested the FDCPA implicitly addressed such issues through its existing exemptions, it left unresolved whether

attorney debt collectors could continue to pursue legal remedies if they were simultaneously required to cease communication with a consumer who disputed the debt. *See id.*

In response to *Heintz*, Congress amended the FDCPA to account for attorney debt collectors. Congress relied, in part, on the recommendations of the Federal Trade Commission (FTC), the agency tasked with enforcing compliance with the FDCPA. 15 U.S.C. § 1692*l*(a). The FTC interpreted the FDCPA as forcing attorneys to, at times, put lawsuits on hold in order to comply with the FDCPA's requirements. FED. TRADE COMM'N, FEDERAL TRADE COMMISSION ANNUAL REPORT 2005: FAIR DEBT COLLECTION PRACTICES ACT 15-16 (2005). The FTC deemed it "impractical and unnecessary to apply the FDCPA to the legal activities of litigation attorneys." *Id.* at 16. Therefore, the FTC recommended that Congress amend either the definition of "debt collector" to exclude attorneys, or amend the definition of "communication" to exclude "actions taken pursuant to the Federal Rules of Civil Procedure or, in the case of a proceeding in a State court, the rules of civil procedure available under the laws of such state." *Id.* Congress subsequently adopted the FTC's latter recommendation and amended § 1692g to exclude "legal pleadings" from "initial communication." *See* H.R. REP. NO. 109-356, at 44, 78 (2005).

Thus, the "legal pleading" exemption applies to documents that specifically relate to an attorney's litigation efforts to collect a debt. In other words, the exemption follows the traditional definition of a pleading: "[a] formal document in which a party to a legal proceeding (esp. a civil lawsuit) sets forth or responds to allegations, claims, denials, or defenses." BLACK'S LAW DICTIONARY 1270 (9th ed. 2009).

In contrast, a writ is a "court's written order, in the name of a state or other competent legal

authority, commanding the addressee to do or refrain from doing some specified act." *Id.* at 1747. Because a writ is issued post-litigation, it cannot be considered a part of the litigation process itself. And there is no indication in the legislative record or case law (including the cases cited by the parties) suggesting the "legal pleading" exemption is to apply generally to any court or legal document. *See Hauk v. LVNV Funding, LLC*, 749 F. Supp. 2d 358, 366-67 (D. Md. 2010) (holding that "an interrogatory is not automatically exempt . . . as a 'formal pleading in a civil action'" because it does not fall within any of the pleading categories exclusively recognized under Rule 7(a) of the Federal Rules of Civil Procedure[1]); *Lilly v. RAB Performance Recoveries, LLC*, No. 2:12-CV-364, 2013 WL 4010257, at *4-5 (E.D. Tenn. Aug. 25, 2013) (distinguishing between documents filed specifically as part of and in support of a complaint and those that are part of the discovery process, where the former constitutes a legal pleading and the latter does not). Extending the exemption to writs and similar documents would render § 1692g(a) inapplicable to attorney debt collectors, which the court expressly declined to do in *Heintz*.

Therefore, the writ of garnishment and the corresponding notices in this case are not legal pleadings. The FDCPA's definition of communication –"the conveying of information regarding a debt directly or indirectly to any person through any medium" – is very broad. § 1692a(2). By sending the Correspondence, Schumacher conveyed information to Adams about her debt for the first time. In the Notice, for example, Schumacher told Adams to direct any objections, disputes, etc. to Schumacher's address and included the following statement: "THIS COMMUNICATION IS

---

[1]FED. R. CIV. P. 7(a) "only" allows the following pleadings: (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) a reply to an answer, if ordered by the court.

AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE." Schumacher Decl. Ex. 1, at 7. Thus, Schumacher engaged in an initial communication with Adams.

> B.    *Schumacher Satisfied the Requirements of § 1692g(a)*

Because Schumacher engaged in initial communication with Adams, he was required to meet the validation requirements under § 1692g(a). The relevant portion of that subsection reads as follows:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, *unless the following information is contained in the initial communication* or the consumer has paid the debt, send the consumer a written notice containing–
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different form the current creditor.

15 U.S.C. § 1692g(a) (emphasis added).

Schumacher met each of the validation requirements listed above. First, the debt amount and the creditor to whom it was owed were clearly listed in the writ of garnishment. Schumacher

Decl. Ex. 1, at 1.  Second, the notices required under § 1692a(3)-(5) regarding debt validation, disputing a debt, and requests for contact information for the original creditor were all included in the Notice.  Schumacher Dec. Ex. 1, at 7.  The Notice used the exact statutory language to convey the information, which the Ninth Circuit has found to be a clear and appropriate method of providing the required information to consumers.  *See Camacho v. Bridgeport Financial Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005) (citing *Jang v. A.M. Miller & Assoc.*, 122 F.3d 480, 484 (7th Cir. 1997)). Third, Schumacher provided Adams all of this information within the required time frame.  The plain language of the statute indicates the five-day requirement is relevant only if the requisite information is not included in the initial communication.  Therefore, Schumacher met each of the validation requirements.  Moreover, Adams concedes that if "the pages that include the current creditor and balance statement are not 'legal pleadings,' then [she] does not prevail on the § 1692g(a) claim." Pl.'s Mot. For Partial Summ. J. 5, Dkt. No. 16.

### C.    *Schumacher's Disclosures Overshadowed Adams's Right to Dispute the Debt*

Adams contends that even if she does not prevail on the § 1692g(a) claim, she should prevail on the § 1692g(b) claim.  Adams alleges Schumacher's decision to send her the garnishment papers and the Notice all at once "obscured and overshadowed" her right to dispute the debt.  Adams maintains she had a right to dispute the debt.

In response, Schumacher claims the requirement that the Notice not obscure or overshadow Adams's right to dispute the debt is not applicable in this case because Adams no longer had a right to dispute a debt that was previously reduced to a judgment.  Further, Schumacher notes that Adams had all the information needed to challenge, and did challenge, the garnishment.  Schumacher also

points out he was statutorily required to send the garnishment papers.

In its original form, the FDCPA did not require that the validation notice requirements described above be conveyed in a non-confusing manner to the consumer. *Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 101 (1st Cir. 2014) (noting that prior to Congress amending the FDCPA in 2006, the FDCPA did not explicitly contain language prohibiting collection activities or communications that overshadowed or were inconsistent with a consumer's right to dispute a debt). Nevertheless, courts typically interpreted the statute as barring debt collectors from sending letters or engaging in conduct that contradicted the validation notice. *Id.* (citing *McMurray v. ProCollect, Inc.*, 687 F.3d 665, 668 n.1 (5th Cir. 2012)); *see also Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1989) (finding "the statute is not satisfied merely by inclusion of the required debt validation notice" because "the notice Congress required must be conveyed effectively to the debtor"). In 2006, Congress officially amended the FDCPA to expressly state that, "Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." 15 U.S.C. § 1692g(b). The "30-day period" referred to in this subsection corresponds to the 30-day validation period established under § 1692g(a). *Feightner v. Asset Systems, Inc.*, No. 3:13-cv-00222-ST, 2014 WL 1571627, at *4 (D. Or. April 18, 2014).

        1.       The Right to Dispute the Debt Is Not Dispositive

A main point of contention between Adams and Schumacher is whether Adams had a right to dispute the validity of her debt given that the debt was previously reduced to a judgment. A judgment does not conclusively establish the validity of a debt.

The purpose behind the FDCPA, and specifically § 1692g, is to 'eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.' *Ellis v. Solomon and Solomon, P.C.*, 591 F.3d 130, 134 (2nd Cir. 2010) (citing S.Rep. No. 95-382, at 4 (1977)). The FDCPA defines debt as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . whether or not such obligation has been reduced to a judgment." § 1692a(5). In other words, a debt consists of an obligation or alleged obligation to pay, not the judgment based on that obligation. However, in *Denman v. Western Mercantile Agency, Inc.*, No. 6:11-cv-6074-TC, 2012 WL 1698173, at *2 (D. Or. May 11, 2012), the court found that "reduction of the debt to a final judgment generally establishes the validity of the debt." In that case, the court was tasked with determining whether a debt collector's statement that the consumer no longer had a right to dispute the debt was false or misleading, in violation of § 1692e(10). *Id.* The court held that making such a statement was not false or misleading because a final judgment was entered against the consumer. *Id.* at 2-3. Further, the court found no legal authority to support a conclusion that a consumer can continue to dispute a debt only because he believes he is "entitled, in his own mind, to dispute any debt or judgment against him." *Id.* at *2.

Nevertheless, whether or not a consumer still can dispute a debt is not determinative in a § 1692g(b) inquiry. "The Ninth Circuit has made clear that the FDCPA provides for strict liability except for very narrow circumstances." *McNall v. Credit Bureau of Josephine County, Inc.*, No. CV 07-3075-CL, 2010 WL 3306899, at *2 (D. Or. Aug. 19, 2010); *see also Riggs v. Prober & Raphael*, 681 F.3d 1097, 1099 (9th Cir. 2012) (noting that to prevent abusive practices and protect compliant

debt collectors from being competitively disadvantaged, the FDCPA "imposes strict liability for violations"). Because § 1692g(a) of the FDCPA requires debt collectors to inform consumers of their right to dispute their debt during the initial communication, it follows that § 1692g(b) takes for granted the consumer has a right to dispute the debt. To hold otherwise would undermine the strict notice requirement under § 1692g(a) and the purpose of the FDCPA. For example, it is foreseeable that a debt collector may mistakenly contact the wrong consumer regarding a debt previously validated by a judgment. In that situation, even though the debt is valid, the consumer would nevertheless have a right to dispute a debt that does not belong to her. Therefore, just as a debt collector must inform a consumer of her right to dispute a debt, the debt collector must also ensure that the initial communication does not obscure or overshadow the disclosure of that right. Neither the FDCPA or the case law provide an exemption to the strict liability requirements of § 1692g(b).

In this case, Schumacher sent Adams the Notice informing her of her right to dispute the debt. In doing so, he had an obligation ensure that his communication did not obscure or overshadow the disclosure of that right.

### 2. The Correspondence Overshadowed Adams's Right to Dispute the Debt

Whether a debt collector's communications overshadowed or were inconsistent with a consumer's right to dispute a debt is a question of law. *Feightner*, 2014 WL 1571627, at *4 (citing *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1997)). For an FDCPA notice "to be effective, the notice must not be overshadowed or contradicted by other messages or notices appearing in the initial communication." *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1225-26 (9th Cir. 1988) (finding that the notice was "misleading in both form and content" because the

"substance of the language [stood] in threatening contradiction to the text of the debt validation notice"); *Dunn v. Derrick E. McGavic, P.C.*, 653 F. Supp. 2d 1109, 1113-14 (D. Or. Sept. 1, 2009) (finding that the attorney's notice overshadowed and contradicted the plaintiff's right to dispute the debt because "without a clear explanation of the simple concept that [the attorney] must cease litigation if [the plaintiff] disputes the debt, the least sophisticated consumer is likely to wonder what good it would do him to dispute the debt if he cannot stave off a lawsuit.").

A debt collector violates § 1692g(b) "if the least sophisticated consumer would likely be misled by the notice." *Swanson,* 869 F.2d at 1225. Courts define a "least sophisticated consumer" as someone who is "uniformed, naïve, and gullible," which is a lower standard than that of a "reasonable consumer." *Feightner*, 2014 WL 1571627, at *4 (citing *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1027 (9th Cir. 2012)). Nevertheless, even a least sophisticated consumer's interpretation of a communication cannot be "bizarre or unreasonable." *Id.*

In this case, the Correspondence, as conveyed to Adams, overshadowed the disclosure of her right to dispute the debt. The least sophisticated consumer would be confused by simultaneously receiving notice of her right to dispute the debt and notice that her wages are about to be garnished to pay for that same debt. The Correspondence would suggest, even to an average consumer, that there is no point in disputing the debt because her wages are already being garnished. In particular, the garnishment notice included the following statement: "YOU MAY <u>NOT</u> USE THE CHALLENGE TO GARNISHMENT FORM TO CHALLENGE THE VALIDITY OF THE DEBT." Schumacher Decl. 5, Ex. 1, at 5, Dkt. No. 14. This statement is ambiguous because it can mean that either (1) the consumer cannot challenge the debt at all or (2) the consumer can challenge the

underlying debt, just not through the garnishment forms.  Without an explanation clarifying the contradictory notices, the least sophisticated consumer would be confused or misled by Schumacher's Correspondence.  Therefore, Schumacher violated § 1692g(b).

        D.      *Obscuring Adams's Right to Dispute the Debt Was Not A Bona Fide Error.*

Although the FDCPA imposes strict liability on debt collectors who violate its provisions, a debt collector may avoid liability "if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692(c).  However, the bona fide error defense does not apply to mistakes of law.  *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, LPA*, 559 U.S. 573, 604-05 (2010).  In *Jerman*, the U.S. Supreme Court found that although attorney debt collectors could have procedures in place to avoid making legal mistakes, the bona fide error defense is most applicable and most likely to prevent "clerical or factual mistakes." *Id.* at 587-88. As a matter of policy, the Court was concerned by the possibility that extending the bona fide error defense to mistakes of law would give consumers "little incentive to bring enforcement actions 'where the law [i]s at all unsettled, because in such circumstances a debt collector could easily claim bona fide error of law." *Id.* at 603.  Thus, the court held debt collectors cannot avoid liability for an FDCPA violation when the violation "result[ed] from a debt collector's incorrect interpretation of the requirements of that statute." *Id.* at 604-05.

The Court's holding in *Jerman* clearly precludes Schumacher from claiming a bona fide error defense.  The record does not establish, and Schumacher has not alleged, that the FDCPA violation resulted from a technical or factual mistake.  Rather, the record establishes Schumacher's violation

of the FDCPA was a result of his misunderstanding of what was legally sufficient to clearly and unambiguously inform Adams of her right to dispute her debt. Schumacher's insistence that Adams had all of the information she needed to challenge the garnishment reflects his misunderstanding of what is legally required to satisfy § 1692g(b). The proper question in this case is whether the *least sophisticated consumer* would have had adequate notice of her right to challenge the *debt*. Therefore, because Schumacher's violation stemmed from a mistake of law, Schumacher cannot avoid liability by claiming a bona fide error defense.

*Conclusion*

For the reasons set forth above, the court GRANTS Schumacher's motion with regard to § 1692g(a), and DENIES the motion as to § 1692g(b). The court GRANTS Adams's motion with regard to the § 1692g(b) violation, and DENIES the motion as to the § 1692g(a) violation. Adams must file a motion with the court indicating the amount of actual and statutory damages and attorney fees sought by December 19, 2014.

DATED this 9th day of December, 2014.

_____/s/ John V. Acosta_____
JOHN V. ACOSTA
United States Magistrate Judge

PAGE 16 - OPINION AND ORDER                                    *{PGR}*